**Henry H. FORD, Appellant,**

v.

**Darlene D. FORD, Appellee.**

No. S–10188.

Supreme Court of Alaska.

April 25, 2003.

---

Karla F. Huntington, Anchorage, for Appellant.

Chrystal Sommers Brand, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

CARPENETI, Justice.

## I. INTRODUCTION

Henry H. Ford appeals from the superior court's decision upholding the settlement agreement reached between him and Darlene D. Ford, its order enforcing the agreement, and its findings of fact and conclusions of law. Because the superior court's finding that the parties intended to enter into a settlement was not clearly erroneous, and its enforcement order was well within its discretion, we affirm its decision.

## II. FACTS AND PROCEEDINGS

Darlene D. Ford and Henry H. Ford were married in Sitka in 1978. In October 1999 Darlene sued for divorce, alleging that Henry desired a divorce and that she would not contest a divorce. Although Henry and Darlene had no children, they did have marital property to divide.

Prior to his marriage to Darlene, Henry owned property in Craig. During their marriage, Darlene and Henry developed the property into the Ford Marina, although it is disputed as to how much each party contributed. The marina is the parties' primary asset.

Darlene and Henry hired Vance Sanders to conduct a mediation on August 31, 2000. Both parties were represented by counsel during the mediation process. The mediation produced a settlement, and the parties went into an empty courtroom to place their agreement on the record. Because the mediation did not end until approximately 6:30 p.m., no court personnel were present when the parties recorded the settlement. Sanders recited the settlement and, as he had invited counsel to do, was interrupted numerous times by both parties' counsel for clarification purposes. At no time during the recital did Sanders ask Darlene or Henry whether they understood the contents of the agreement, whether the agreement was voluntarily entered into, or whether they were willing to abide by its contents. Chrystal Sommers Brand, counsel for Darlene, was responsible for preparing the settlement documents.

On October 5 counsel for Henry, H. Clay Keene, informed the Ketchikan court that the mediation had settled the case in its entirety. That same day, Brand filed a notice of settlement with the court. In it, Brand notified the court that the parties had settled and that she was in the process of preparing the settlement papers.

The parties scheduled a hearing to put the settlement on the record on December 13. On November 28 Keene requested a continuance of the hearing because Brand had failed to provide him with a copy of the agreement. Brand filed a non-objection to Keene's request. In it she stated that the hearing would only entail entry of the final decree and findings, as the parties had settled the case. The continuance was granted and the hearing rescheduled for February 5, 2001. Prior to the February 5 hearing, Keene asked for another continuance because he had not yet had the chance to review the settlement documents with Henry.

On February 14 Darlene moved to enforce the settlement agreement. In the motion, Darlene argued, among other things, that Henry had failed to vacate the marina by December 31, 2000 as the parties had agreed he would. Darlene further argued that Henry had failed to remove his personal property from the marina, failed to clean up the property, and failed to ensure that any other persons residing there also vacated the property, as they agreed he would. All of these actions, Darlene argued, had been agreed upon so that the marina could be sold under the best possible conditions as quickly as possible. Darlene and Henry were then to divide the profits from the sale according to their agreement.

Henry opposed Darlene's motion to enforce the settlement agreement. He asked the court to allow the case to proceed to trial with his new counsel, Michael P. Heiser. The basis of Henry's objection and motion was that, at the time of the mediation, he was in poor health. Henry claimed that because of his health he could not concentrate during the mediation and "did not understand the true nature and consequences of his actions and did not know how to express settlement intentions to his attorney present at the con-

ference." Henry claimed, "All I [knew] is [that] I needed to have the hearing end so I could get rest and get away from the intolerable stress of the mediation."

Henry contended that had he not been in poor health, he would have "vigorously opposed" the sale and distribution of the marina, as he believed it to be his separate property, improved and developed with his separate funds. Henry also claimed that Darlene "devoted very little, if any, effort to the management, maintenance or improvement of the property" and that "[t]he title to this property was put in both our names on advice of counsel for estate planning purposes only." Henry also argued that Sanders's failure to inquire as to whether Henry understood the nature of the settlement and if he entered into the agreement freely and voluntarily was grounds for finding no agreement had occurred.

Darlene responded to Henry's objection to her motion to enforce and she opposed Henry's cross-motion to set for trial. Darlene contended that the transcript of the settlement recital showed that Henry was an active participant in the proceeding. Darlene also noted that Henry made no specific objections that the settlement documents submitted by Brand did not conform with the settlement agreed to at mediation. Thus, assuming the court found the agreement was enforceable, Darlene argued that the proposed findings of fact and conclusions of law should be entered. Darlene attached an affidavit from Vance Sanders stating that Darlene and Henry did reach a final settlement and that the settlement was placed on the record.

In his reply, Henry requested an evidentiary hearing to determine whether the case should be set for trial. Henry filed an additional affidavit on March 27. In it, he states:

> I also want to point out that I was confused about the purpose of mediation. I believed that the mediation involved hashing out various points of view before a referee. I thought anything at the mediation was not final until I had an opportunity to look over a document and decide whether or not to sign it. I thought a contract had to be signed. I thought if I

did not like what a document said we could go to trial.

Superior Court Judge Michael A. Thompson held a hearing on all pending motions in April 2001. At the hearing, Henry and Darlene testified. Henry testified that the marina was his separate property and that he had no recollection of the placement of the settlement on the record, claiming that his memory was very vague and that he did not understand the proposed division of the marina. Henry testified that Darlene's only participation with the marina was as its bookkeeper.

Darlene testified that she believed the marina was marital property. After the parties were married, Darlene claimed to have helped develop the marina, helping Henry to build the dock as well as other tasks. Darlene also testified that she understood the agreement at the time of the recital to be final and binding.

The court found that the mediation had produced a binding settlement agreement between the parties. Judge Thompson then issued an order to enforce the settlement and signed the decree of divorce and findings of fact and conclusions of law submitted by Darlene.

Henry appeals.

## III. STANDARD OF REVIEW

■ We analyze a settlement agreement under traditional contract principles.[1] "[C]ourts need not accept property settlements as controlling when the facts indicate that an agreement was not made with full understanding."[2] "Whether the parties to an informal agreement become bound prior to the drafting and execution of contemplated formal writings is a question of intent."[3] We determine the parties' intent under the clearly erroneous standard by looking to the surrounding facts and circumstances in each case.[4] "A finding of fact is clearly erroneous when [we are] left with a definite and firm conviction that the trial court has made a mistake."[5]

■ We review questions regarding a trial court's response to a motion to enforce a settlement under the abuse of discretion standard.[6] We will find an abuse of discretion has occurred when, after a review of the entire record, we are left with a definite and firm conviction that the trial court has erred in its ruling.[7]

## IV. DISCUSSION

### A. The Superior Court's Finding that Darlene and Henry Intended To Enter into a Final Agreement when They Placed Their Property Settlement on the Record Directly After Mediation Was Not Clearly Erroneous.

Henry contends that the trial court erred in determining that the recital of the agreement reached on August 31 was a final and binding settlement. We disagree.

#### 1. Expressed intentions

■ Henry claims he did not think recitation of the agreement after mediation constituted a final agreement. "In determining

1. "Courts will treat settlement agreements as contracts provided they meet minimal contractual requirements." *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999) (citing *Gaston v. Gaston*, 954 P.2d 572, 574 (Alaska 1998); *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997)). To form a contract, an offer including all essential terms, an unequivocal acceptance of those terms by the offeree, consideration, and an intent to be bound by the contract are required. *Young v. Hobbs*, 916 P.2d 485, 488 (Alaska 1996).

2. *Notkin v. Notkin*, 921 P.2d 1109, 1112 (Alaska 1996).

3. *Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985).

4. *Id.*

5. *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

6. *Dickerson v. Williams*, 956 P.2d 458, 462 (Alaska 1998).

7. *Liimatta v. Vest*, 45 P.3d 310, 313 (citing *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982)).

the parties' intent, [we] look first to the parties' expressed intentions."[8]

### a. The transcript

██ Preliminarily, Henry notes that the transcript available to the superior court is incomplete as it ends before the termination of the proceeding.[9] Henry argues that Judge Thompson could not have properly assessed whether the recital led to a binding settlement because he did not rely on a complete transcript of the proceeding. From his comments at the hearing, it appears that Judge Thompson relied on the incomplete transcript. Judge Thompson made reference to page numbers from the incomplete transcript at the hearing.

██ Henry's argument was not raised below and is therefore waived. Moreover, the superior court's failure to use a complete transcript in rendering its decision was not clearly erroneous. The dialogue missing from the transcript used by the trial court only further supports Judge Thompson's findings that Henry intended the settlement to be binding, as it makes clear the parties' intent that the agreement is final. There are some minor instances where the incomplete and complete transcripts differ; however, none of these differences provides any basis for reversing the trial court's decision.

### b. Judge Thompson's findings

██ At the April 12 hearing, Judge Thompson found that the degree of Henry's participation indicated his intent to engage in a final, binding process on the day of mediation. Judge Thompson noted eleven separate instances in the recital process where Henry made topical and relevant observations regarding settlement of various issues:

> The subjects being discussed at the time he's making his contribution, all of which seem sensibl[e] contributions on his part where he points out the difficulty in disposing of a documented vessel, where he reminds the participants that Ms. Ford can't mail firearms.... I mean these are all very sensible observations. [These do] not appear to be observations that would be made by a person who is in so much pain [he] can hardly be aware of what's going on around him. He seems to have been a full-fledged participant there.

There is no expression to suggest that Henry was suffering any type of pain, that he in some way did not agree with the final settlement, or that he did not understand what was taking place. Henry argues that this is because he "tuned out" and just wanted the mediation to be over.

██ We rejected a similar argument in *Pavek v. Curran.*[10] In *Pavek*, Curran was present and spoke at the hearing[11] and did not object to the terms of the agreement.[12] Curran then claimed she did not understand the significance of the agreement and alleged that the settlement was invalid.[13] We found Curran's claim "groundless," finding that her presence at the hearing without objection and her participation in it implied her understanding.[14] Similarly, in light of Henry's active participation, particularly at the end of the day when he now alleges he was exhausted and unable to understand the process, the superior court's finding that Henry intended to settle the case on August 31 was not clearly erroneous.[15]

---

8. *Juliano,* 708 P.2d at 1291.

9. A transcript prepared by another transcriber was lodged with this court and contains a complete record of the proceeding.

10. 754 P.2d 1125 (Alaska 1988).

11. *Id.* at 1126–27.

12. *Id.* at 1127.

13. *Id.* (alleging agreement did not provide enough security in the event Pavek defaulted on payments).

14. *Id.*

15. It is true that we qualified our holding in *Pavek* by noting that Curran made no claim that she was defrauded or under duress. *Id.* Although Henry does allege duress here, Judge Thompson found Henry was not a credible witness on this point when he testified at the April 12 hearing, a finding within the ambit of the superior court, not the appellate. *Barios v. Brooks Range Supply, Inc.,* 26 P.3d 1082, 1087 (Alaska 2001) ("Witness credibility determinations are left to the trial court.").

### c. The proposed later reduction of the settlement to writing

 Henry next argues that the parties' stated intention to reduce the agreement to writing shows that their oral recital was not a binding agreement. But a brief review of all of the participants' statements shows the incorrectness of Henry's position. Sanders began the recital process by stating that a settlement had been reached and was going to be placed on the record. Brand stated that it was her intent to put the agreement in written form so that the parties could have something to reference but that the settlement was final. Keene stated that the agreement, as stated on the record, was binding on Henry and Darlene. Sanders ended the proceedings by stating that Alaska law was clear the parties would be held to the settlement as set out at that point by the parties. Under these circumstances, the references to a later writing do not support Henry's position that the recital was not final and binding.

### d. Henry's age and condition

 Henry also claims that his age and condition affected his understanding and that it was error for Judge Thompson to find that his age could only have benefitted him throughout the mediation process. It is true that Henry has well-documented medical problems and that he was 73 years of age at the time of the litigation below. There is no evidence, however, that these conditions affected Henry at the mediation. Moreover, Henry was represented by counsel. Neither Keene nor any doctor has submitted an affidavit stating that Henry was incompetent at the time, that he did not understand the proceedings, or that he had trouble concentrating. And his active participation throughout the recital process undercuts his present claim. Henry asserts that he felt safe in tuning out because he did not believe the agreement was final, but there is no contemporaneous evidence that Henry did in fact "tune out."

Rather, Henry actively participated in discussions on how the marina would be divided: Henry's counsel asked how an allowance granted to Darlene for her efforts in market-ing the marina would be impacted by expenditures over the allotted amount. When Henry heard the answer, he commented, "That's fair." He volunteered to contact the Coast Guard regarding disposal of garbage at the marina. Henry also stated that he would work to ensure that a vessel was removed from the marina prior to his vacating the property. He discussed how profits from the sale of oil containers would be shared. In all, he contributed no less than seven comments to the discussion concerning the marina's division.

From these statements, we conclude that Judge Thompson's findings that Henry not only participated at the mediation, but that it was his intent for Darlene to sell the property and that the proceeds from that sale would be distributed to the parties, and that Henry intended the settlement to be binding, were not clearly erroneous.

### e. Extrinsic circumstances

Henry last argues that extrinsic circumstances support his contention that he did not intend to be bound by the agreement. While the trial court pointed to the delay from the August mediation to Henry's first objection to the settlement's validity in February as evidence that Henry originally intended to be bound and was now only suffering from "buyer's remorse," Henry argues that during the entire period he did not believe any agreement had occurred; therefore he had no reason to ask his lawyer to try and rescind the agreement. Henry claims his delay was simply the result of Brand's delay in reducing the agreement to a written document. Henry argues that his failure to abide by the agreement was further evidence of his not knowing that it was binding.

 Henry's argument does not account for what actually occurred during the recital and is not persuasive as to what occurred later. Henry was present after the mediation when Sanders, Brand, and Keene (Henry's lawyer) stated that the agreement was binding. Moreover, it is not entirely true that Henry failed to abide by the agreement. At one point Keene requested an extension of the date Henry was to leave the property,

which suggests that Henry did in fact know there was an agreement. Also, at both sides' request, the trial was taken off the calendar, and no further settlement conferences or litigation ensued. Yet Henry took no step to resolve a matter that, according to his present position, was unresolved. Finally, we agree with Darlene's contention that to credit Henry's argument that his failure to abide by the agreement is evidence that he did not believe he was bound by it opens the door for any party to a contract to breach the contract and then use that breach as evidence of his or her belief that no contract had been entered.

### 2. Enforcing an agreement where the mediator failed to ask the parties whether the agreement was entered into voluntarily and whether they understood the agreement does not violate public policy.

Henry contends that it would violate public policy to enforce an agreement where no one asked the parties whether they had entered into it voluntarily, understood its contents, and agreed to be bound. Henry argues that the presumption of enforcing settlements should not apply in these circumstances. Darlene responds that any such "magic words" requirement would itself be against public policy. We agree with Darlene.

 Henry argues that, because he was not asked whether he entered into the agreement voluntarily, no valid settlement was reached. He claims that the court erred in applying the presumption in favor of settlement,[16] as that presumption only applies to those settlements that are valid. Henry misconstrues both the law and Judge Thompson's statements. In his remarks, Judge Thompson stated that settlements are favored and should be enforced. But Judge Thompson was careful to note that the presumption applied only to a valid settlement:

"for their own sake we should enforce settlements *when they're reached.*" (Emphasis added.) Thus, it is clear that the court carefully determined the settlement to be valid before it applied the presumption of enforcement.

 In *Crane v. Crane,*[17] we held that a party need not expressly state on the record that it entered into a settlement agreement voluntarily for the agreement to be considered valid.[18] We made this finding based on the fact that Crane was represented by counsel and by looking to the record.[19] Henry distinguishes himself from Crane by arguing that, unlike Crane, he did not have the final settlement agreement before him, he was not present before a superior court judge, and he was not required to read or sign off on a written document. These distinctions do not call for a different result. Henry did not have an agreement before him because the parties had yet to put the oral agreement into written form. And the presence of a superior court judge is not required for the parties to enter into a binding agreement. Henry argues the lack of a judge is evidence that he did not intend the recital to be final. However, non-judicial settlement officers, mediators, and arbitrators are frequently used and Henry's rule would require a judge's presence to complete an agreement in any of these settings, an obviously unattractive rule.

It is true that this case would be easier for us—and would have been easier for the superior court—if the mediator had directly addressed the parties during the recorded session and confirmed that each understood the settlement and agreed with it. Simple affirmations by the parties of their understanding and intent to be bound may have obviated the need for an extensive evidentiary hearing and for later detailed reviews of the recitations made at the recorded session. Nonetheless, we reject Henry's contention

---

**16.** "[S]tipulations and settlements are favored in law because they simplify, shorten and settle litigation without taking up valuable court resources." *Murphy v. Murphy,* 812 P.2d 960, 965 (Alaska 1991) (internal quotations omitted). This "principle applies in the context of divorce property settlements." *Notkin v. Notkin,* 921 P.2d 1109, 1111 (Alaska 1996).

**17.** 986 P.2d 881 (Alaska 1999).

**18.** *Id.* at 886.

**19.** *Id.*

that, without particular questions or recitations when a settlement is put on the record, either party may successfully attack the settlement. We encourage judges and mediators who conduct settlement proceedings, and who reach settlements, to confirm on the record directly with the parties their understanding of the settlement and their intentions to enter into it, but we reject the proposition that the failure to conduct such inquiries is necessarily fatal to the entry of a settlement.

It was not clear error for Judge Thompson to find that Henry did intend to settle. It was not an abuse of discretion for Judge Thompson not to have required statements of voluntariness from the parties for the agreement to be valid.

**B. The Trial Court Properly Entered Findings of Fact and Conclusions of Law, and Minor Factual Errors in the Findings and Conclusions Do Not Require Reversal.**

Henry claims the trial court committed legal error by not reading the findings of fact and conclusions of law before signing them. He points to two mistaken dates[20] and a misstatement that Henry appeared "personally" rather than "telephonically" at the hearing. Henry also notes a substantive error in the divorce decree: The property table states that the Ford Marina is valued at $1,400,000 and apportions $700,000 to both Darlene and Henry, whereas paragraph 2 of the decree states that fifty-five percent of the value of the marina should be distributed to Darlene and forty-five percent to Henry.

Darlene argues in response that Henry never properly objected to these factual errors at the trial court level to allow for their correction. She further contends that the

errors are merely clerical and do not affect the substance of the divorce decree or findings of fact and conclusions of law. We agree with Darlene.

Henry failed to bring these errors to the superior court's attention after initially requesting additional time to bring objections under Alaska Rule of Civil Procedure 78(b), raising the possibility that he waived the alleged errors. But we need not decide whether Henry's failure to file objections under Rule 78(b) constituted a waiver of these arguments, because Henry's arguments for reversal lack merit.

■■■■ Although Henry is correct that the decree of divorce and findings of fact and conclusions of law do contain factual errors, the errors are not substantial.[21] They hardly constitute evidence that Judge Thompson did not read the documents. Further, the one substantive error does not warrant undoing the settlement. This is because the mistake in the distribution in the property table is evident from the text of that table. The property table states "entire property (upper and lower) to be sold and proceeds distributed as set forth in Paragraph 2 below." Paragraph 2 thus controls and the division should be governed by the fifty-five percent/forty-five percent division in Darlene's favor found in that paragraph. Moreover, even if the document were ambiguous, the transcript of the recital of the agreement makes clear that the parties intended a fifty-five percent/forty-five percent split. There is, therefore, no basis to reverse the superior court's findings and conclusions. It is sufficient that the superior court correct the clerical errors concerning dates, note that Henry participated telephonically rather than in person at the hearing, and insert the correct distributional figures (fifty-five and forty-five percent of

---

**20.** Henry argues that "[b]oth the decree and findings erroneously state that the Divorce hearing was on February 5, not April 13." (The hearing was actually on April 12.) And he notes that "the Decree of Divorce misstates the date of the initial recitation as August 2001, not August 2000."

**21.** The decree as well as the findings both state the hearing took place on February 5, whereas it actually occurred on April 12. That is most likely because the hearing was at one point

scheduled for February 5. These pleadings were lodged January 30, 2001 to allow Henry five days to make objections to them under Alaska Rule of Civil Procedure 78(b) in order that they could be signed at the February 5 hearing.

The statement that Henry appeared "personally" rather than "telephonically" is factually incorrect, although it may merely reflect incorrect usage. The decree does contain a typographical error concerning the year of mediation.

$1,400,000 for Darlene's and Henry's shares, respectively, of the marina).

### C. The Trial Court Did Not Abuse Its Discretion in Issuing the Order To Enforce the Settlement Agreement.

Henry argues that the order to enforce the settlement agreement grossly exceeded the terms of the actual agreement, a modification the court did not have the power to enforce. We disagree.

Under the decree Darlene was charged with marketing the marina, and Henry agreed to undertake certain tasks to aid in that endeavor. The decree provided Darlene with payment for her services and advanced her the sum of $3,500. Darlene was to notify Henry of proposed expenditures in excess of this amount and obtain his consent. Darlene and Henry would then split these costs. When Henry failed to meet his obligations, Judge Thompson ordered Henry to pay Darlene $10,000 as an advance for her expenses in hiring people to help her clean up the Ford Marina. Henry claims this was a unilateral modification of the property settlement and thus impermissible.

Henry relies on *Davis v. Dykman*,[22] where we found a settlement agreement invalid because it was uncertain.[23] The agreement failed to state a dollar amount of the settlement or any method for calculating the dollar amount.[24] Although the parties asked the superior court to fill in this gap for them, we held that " '[t]he courts should not impose on a party any performance to which he [or she] did not and probably would not have agreed.' "[25] Henry argues that the trial court should not have been allowed under *Davis* to order the additional payment. But *Davis* is inapposite. Here the trial court was faced with remedying a breach, not filling in the gaps of an agreement. Henry did not fulfill any of his responsibilities under the agreement with regard to the Ford Marina. He did not clean the property, sell the equipment on the property, or ensure the property was vacated by its tenants. Indeed, the condition of the property allegedly worsened after the August 31 mediation.

In order to remedy the situation, Darlene requested in her motion to enforce that she be entitled to take all necessary actions and be compensated for her actions to ready the marina for sale. She also requested that she be advanced $10,000 for this purpose. Judge Thompson thus ordered Henry to pay Darlene an *advance* of $10,000 to accomplish this. Henry did not object to this request at the superior court level and only now voices his opposition. The order falls within the superior court's powers to enforce its own orders[26] and was not an abuse of the court's discretion.

Henry also asks that the award of attorney's fees be vacated as an improper exercise of the court's authority. We decline to consider the argument because it is inadequately briefed.[27]

### V. CONCLUSION

The superior court's finding that Henry intended to be bound by the recorded recital of the parties' settlement agreement after mediation on August 31 was not clearly erroneous. The superior court properly issued findings of fact and conclusions of law, and factual errors in the findings should be corrected upon remand. The superior court did not abuse its discretion in issuing the order to enforce the property settlement. We therefore direct that the clerical and computational errors in the decree be corrected upon remand and we AFFIRM the decision of the superior court.

---

22. 938 P.2d 1002 (Alaska 1997).

23. *Id.* at 1006.

24. *Id.*

25. *Id.* at 1007 (quoting *Rego v. Decker*, 482 P.2d 834, 837 (Alaska 1971)).

26. *Johnson v. Johnson*, 544 P.2d 65, 72 (Alaska 1975) (noting that the court's inherent power to enforce its decrees may justify a court in going even beyond the parties' requests).

27. *Stosh's I/M v. Fairbanks N. Star Borough*, 12 P.3d 1180, 1183 & n. 12 (Alaska 2000).