Jeffery L. MURPHY, Appellant,

v.

Gail MURPHY, Appellee.

No. S–3693.

Supreme Court of Alaska.

June 7, 1991.

---

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### INTRODUCTION

Pursuant to an action for divorce, Jeffery and Gail Murphy entered an oral stipulation settling their property and custody dispute. The superior court adopted the stipulation over Jeffery's objection. The stipulation awarded Gail virtually all the marital property, worth approximately $300,000. Jeffery was awarded the three children. He was also awarded $450 per month in child support. He appeals the superior court's refusal to set aside the property settlement and its determination of child support under Civil Rule 90.3.

### FACTS AND PROCEEDINGS

Jeffery and Gail Murphy were married in Kenai on February 23, 1982. The couple has three children: Jeffery, born in 1983, Michael, born in 1985, and Christopher, born in 1988. During the marriage, both Gail and Jeffery had worked as instrument technicians on the North Slope. By January 1985, however, the couple had settled down in Homer and purchased a business, the Driftwood Inn, with their earnings. Essentially, Gail tended the children while Jeffery managed the business.

Jeffery filed a complaint for divorce in August 1988. Pursuant to her motion for interim relief, Gail was awarded pendente lite child support of $1,000 per month ($333.33 per child), spousal support of $1,000 per month, and $900 per month in housing costs.[1]

On August 10 and 11, 1989, the parties participated in lengthy settlement negotiations before Judge J. Justin Ripley. On August 11, 1989, an oral settlement agreement was put on record. Pursuant to the stipulation, Gail received all marital proper-

Joseph L. Kashi, Soldotna, for appellant.

Phil N. Nash, Kenai, for appellee.

1. Gail had filed a motion for interim relief requesting, *inter alia,* $1,500 per month in child support ($750 per child because her youngest was not yet born) and $2,000 per month in spousal maintenance. Jeffery opposed it as being excessive.

ty; Jeffery kept his personal effects and some premarital property. The value of the marital property awarded to Gail was approximately $300,000. It included the Driftwood Inn and adjacent lots with a net value of $172,200; equity of approximately $21,500 in the Inlet Trading Post; cash or certificates of deposit pertaining to the Driftwood Inn approximating $47,500; and other miscellaneous assets such as boats, motor vehicles, household items, and guns worth approximately $60,000. Gail incurred a debt of some $27,000 in order to pay her attorneys and a CPA in connection with the divorce proceedings. Jeffery, whom everyone agrees is a fit custodian, received custody of the three children. Child support was to be determined later in accordance with Civil Rule 90.3.

After the divorce, Jeffery was left with approximately $1,600 in cash and other liquid assets. He and the children moved into a used trailer. Jeffery had not yet obtained other employment. Gail suffers from a knee injury and cannot do heavy work; Jeffery's earning capacity is superior to that of Gail's. In his motion for child support, Jeffery requested a temporary award of $2,700 per month for interim child support, and a final award of $2,500 per month. He argued that such an award was necessary for the children's needs, particularly their special health needs.

On September 11, the superior court entered a pendente lite child support order, without findings, which awarded Jeffery $1,500 per month pending the final Civil Rule 90.3 child support order. Additionally, the order enjoined Gail from transferring, selling, conveying or alienating any property received as a distribution of marital property.

On November 3, 1989, a hearing to resolve all outstanding issues was set for November 7, 1989.[2] On November 7, Jeffery served opposing counsel with various motions, including a motion to set aside a portion of the settlement stipulation or, in the alternative, to provide for the cash payment of child support as an "in gross" lump sum from marital property. The court denied all of Jeffery's motions.

At the conclusion of the November 7 hearing, the superior court found that Gail "wilful[ly]/intentional[ly]" failed to comply with the interim child support award and awarded Jeffery the difference between the amount paid and the amount due, plus $300 for cost of enforcement. However, the court also entered an order which vacated the injunction against the transfer of property and confirmed the settlement agreement. Additionally, it ordered Gail to pay child support under Civil Rule 90.3 at $450.00 per month ($150.00 per child). The child support award was based on the superior court's finding that Gail's anticipated income from all sources, including her income from odd jobs until she opened a nutritional consultant business, would be $1,800 per month. Jeffery's appeal followed.

Jeffery argues that the superior court erred in its Civil Rule 90.3 computation by failing to account for Gail's investment and potential investment income, by failing to consider Gail's potential employment income, and that the overall award was too low. He also argues that the superior court erred in not ordering Gail to pay support "in gross" and in failing to set aside the property settlement.

We conclude that the superior court erred in departing from the requisites of a proper Civil Rule 90.3 computation. As we discuss below, the remaining points on appeal lack merit.

CIVIL RULE 90.3 AWARD

■ The standard for reviewing a child support award is whether the trial court

---

**2.** Jeffery requested oral argument on September 14, 1989 to determine permanent child support under Civil Rule 90.3. On September 21, 1989, Jeffery filed a motion for order to show cause because Gail indicated she would not pay child support. By the time of the hearing on November 7, 1989, Gail had paid only $2,900 out of $4,500 owed under the pendente lite order.

On October 3, 1989, Gail filed a motion for expedited consideration of essentially all issues. On or about October 18, 1989, Jeffery served upon Gail discovery requests pertaining to the child support criteria and her ability to pay. This was due November 18, 1989. Gail filed for a protective order on November 2, 1989.

abused its discretion. *Coats v. Finn*, 779 P.2d 775, 776 (Alaska 1989); *Houger v. Houger*, 449 P.2d 766, 771 (Alaska 1969). We will not find an abuse of discretion unless we have a definite and firm conviction based on the record as a whole that a mistake has been made. *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1191 (Alaska 1987).

We hold that the superior court abused its discretion by considering irrelevant factors in calculating the Civil Rule 90.3 award. *Cf. Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982) (it is abuse of discretion for a court to consider improper factors in custody context). In the case at bar, the superior court attempted to punish Jeffery and his attorney in its Civil Rule 90.3 award. This is shown by the following excerpt:

*By Mr. Kashi [Jeffery's attorney questioning Gail]:*

Q  Question number one, aside from the Inlet Trading Post rent, and the Driftwood Inn, do you have any other sources of income? Since, say, let's say, oh, the middle of August of 1989?

THE COURT: That's yes or no.

A  No.

Q  Do you recall selling marijuana to a 16 year old child since that time?

MR. NASH: Oh, Judge....

THE COURT: Sustained.

MR. KASHI: Your Honor, it's a source of income.

THE COURT: Oh, Mr. Kashi, I'm going to find this case against your client based on that last question from here on out.

MR. KASHI: Okay.

THE COURT: We're in recess. Type up an order. I'm going to sign it. He's done. You did this to yourself, friend. You shot yourself in the leg. Make the findings, I'll sign the order, Mr. Nash.

It is also shown by the court's findings of fact:

That despite the court's warning at the outset, plaintiff persisted in a broad ranging attack comprised of irrelevancies, misapplied authorities and personal vilification all for the purpose of evading the property settlement previously agreed to on 8/11/89. Further, this motive, clearly discernible from plaintiff's conduct, evidenced by his filings since August 11, 1989 demonstrates bad faith. Finally, the court find [sic] that modest sanctions will not deter plaintiff from this conduct.

■  In its conclusions of law, the superior court specifically stated, "[A]lthough the record amply supports the findings and conclusions proposed by defendant and adopted by the court, the court additionally concludes that they should be and hereby are found and entered as appropriate sanction for plaintiff's bad faith demonstrated herein."

Bad faith is a totally inappropriate factor to consider in determining a child support order. While we refrain from determining whether attorney sanctions would have been appropriate in the case at bar, we hold that lowering a child support award is an inappropriate means of controlling attorney conduct.[3]

■  Further, the court's findings do not demonstrate consideration of the special needs of the children. Civil Rule 90.3(c)(1)(A) reads,

(c) **Exceptions**

(1) The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied.... Good cause may include a finding:

(A) that unusual circumstances, such as especially large family size, signifi-

---

**3.** Our decision to remand for a complete redetermination of child support pursuant to the dictates of Civil Rule 90.3 is fortified by the superior court's apparent unpreparedness in calculating its support award. Although we are cognizant of the pressures facing a trial court in managing its calendar, here the court had the option of continuing the case in the event it needed additional time to prepare, or in the event it determined that discovery was incomplete.

cant income of a child, health or other extraordinary expenses, or unusually low expenses, exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children....

*See also* AS 25.27.060(a) [4] (the need of the child for support shall be considered in an order of support); *Hunt v. Hunt,* 698 P.2d 1168, 1172 (Alaska 1985); *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987); *Curley v. Curley,* 588 P.2d 289, 292 (Alaska 1979).

Both parents acknowledge the children's special health needs. Jeffery, the oldest child, has been diagnosed as having mental retardation, brain damage, and autism. In her motion for interim relief, Gail herself requested $750 per child. She explained, "Although initially this sum may seem large, it must be remembered that the eldest child sufferers from severe handicaps which require extensive care and very expensive food supplements."

When Gail had custody of the children, she received $1,000 per month for pendent lite child support, $1,000 per month in spousal support, and approximately $900 per month in mortgage payment and upkeep for her residence.[5] In Gail's financial statement filed with the court in August 1988, she estimated her expenses to be $3,156.84, with a food and household supplies budget alone of $1,000 per month. After Jeffery took custody of the children, he received $1,500 per month in his pendent lite child support award. Moreover, Gail volunteered to pay $1,000 or $333.33 per child in temporary support.

On remand, the superior court should specifically identify the reasonable needs of the three children and the ability of the parents to meet those needs, pursuant to

Civil Rule 90.3. *See Hunt v. Hunt,* 698 P.2d at 1173. Given that the consideration of irrelevant factors tainted the entire award in this case, we believe that the questions of investment income and potential employment income should be considered anew on remand.

## FAILURE TO ORDER SUPPORT "IN GROSS"

Jeffery alleges that future child support payments may not be forthcoming, given Gail's past failure to comply with the child support order, her lack of employment income, her disposal of assets, and her hiding assets. Jeffery believes that, at the least, Gail should be required to provide some security for these obligations. This request for security is a new request made for the first time on appeal. Gail argues that even assuming her past failure to pay support was willful, an in gross award is not warranted.

The superior court's findings note that Gail has sold the Driftwood Inn and its findings acknowledge a steady stream of income for the term of the sales contract. As this income can be garnished pursuant to AS 25.27.062,[6] the refusal to award the support in gross was not an abuse of discretion.

Moreover, sufficient evidence exists supporting the superior court's finding that Gail was not hiding assets.[7] Indeed, Jeffery's evidence indicating that Driftwood Inn employees were requested to hide assets had to do with Gail's mother, who was helping Gail run the Inn, and not with Gail herself. Gail did not deny the charge, but testified that when she heard that her mother had a desire to hide assets, she "immediately put a stop to it" and she made her mother "account every day for her room sales." As far as alleged prepayments on the mortgage on the Inn,

---

**4.** Formerly AS 47.23.060.

**5.** In the property settlement, Gail obtained ownership of the Inlet Trading Post, where the children previously lived. Jeffery had to obtain new housing.

**6.** Formerly AS 47.23.062.

**7.** Under Civil Rule 52(a), factual findings may be reversed only if clearly erroneous. *Horton v. Hansen,* 722 P.2d 211, 215 (Alaska 1986). The court must be "left with a definite and firm conviction on the entire record that a mistake has been made...." *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979) (citations omitted).

which Jeffery believes Gail made to hide her assets, Gail explained that she made these payments to satisfy the buyer. The on-site manager for the Driftwood Inn testified that she did not believe Gail hid any money while she was there. Finally, Gail sold the Inn only subject to the superior court's removal of the injunction against her transferring assets.

## REFUSAL TO SET ASIDE THE PROPERTY SETTLEMENT

Jeffery requested that the superior court set aside the property settlement. The superior court viewed this request as a bad faith attempt to evade the property settlement. Jeffery argues that, as a matter of public policy, this court should invalidate the property agreement because the "pressure of the settlement conference and concern about his children" led him to act. He cites *Arndt v. Arndt*, 777 P.2d 668 (Alaska 1989), and says this important case was not known by counsel at the time settlement was reached. He also argues that the expectation that Gail would pay reasonable child support formed the basis of the August 11, 1989 stipulation. After a low award and Gail's failure to pay, he fears for the children's financial needs.

■ The superior court did not err in failing to set aside the property settlement. The standard of review and the substantive issue are intertwined, both governed by *Kerslake v. Kerslake*, 609 P.2d 559 (Alaska 1980), and *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104 (Alaska 1977). In *Kerslake*, we decided, on a motion to reconsider, that a court "may accept as 'just' a divorce property settlement entered into by parties represented by counsel." *Id.* at 560. We relied upon AS 09.55.210(6), now AS 25.24.160(a)(4), which gives the court power to divide the parties' property "in a just manner" and held,

Although this section grants broad authority to a trial court to fashion property settlements absent an agreement, we

do not read the section as imposing an affirmative duty on a trial court to examine every property settlement reached by the parties to determine if it is just. We favor the rule advocated by Professor Clark that, insofar as an agreement relates to the division of property,

the separation agreement should be controlling in the absence of fraud, duress, concealment of assets or other facts showing the agreement was not made voluntarily and with full understanding.

H. Clark, Law of Domestic Relations § 16.10 at 551 (1968). While counsel for Charlot Kerslake raises the spectre of "concealment of assets" or "lack of understanding," it seems clear that Charlot and her counsel understood that she was entering into a stipulation with incomplete knowledge, but she apparently considered it to be adequate enough at the time to make an informed decision.

*Kerslake*, 609 P.2d at 560 n. 1.

In *Interior Credit Bureau*, the credit bureau challenged the enforceability of an oral stipulation to settle a case, entered into by counsel with their clients' authority. 559 P.2d at 104–05. The Credit Bureau sought to withdraw from the settlement. We held that when a stipulation is recognized in open court or made in writing and filed with the clerk, and there is no dispute as to the material terms of the settlement, the stipulation is enforceable. *Id.* at 106–07. This was applied to the divorce property settlement context in *Kerslake*, 609 P.2d at 560. The rationale behind the rule is that "[s]tipulations and settlements are favored in law because they simplify, shorten and settle litigation without taking up valuable court resources." *Interior Credit Bureau*, 559 P.2d at 106. Jeffery admits that at the end of the August 11, 1985 negotiations, the stipulation was put on the record in open court. At that time, he agreed to the arrangement.[8]

---

**8.** We note that AS 25.24.220(h) affords no help to Jeffery. While that provision demands that court use a heightened level of scrutiny in reviewing a property settlement if a minor child of the marriage exists or if a patently ineq-

uitable division of the marital estate occurs, these new portions of AS 25.24.220 were adopted in 1990 after the hearing and afford no additional protection for divorce actions commenced under AS 25.24.010. The legislature

Jeffery's citation to *Arndt* does not change our analysis. What would have been error in *Arndt*, was not an error here. Gail was not awarded a higher property settlement to ease her burden of child support. Rather, the child support and property division were considered independently at separate times.

We therefore AFFIRM, in part, and REVERSE, in part, and REMAND for redetermination of child support.[9]

may want to consider extending the heightened level of scrutiny to divorces commenced under AS 25.24.010, for the need for heightened scrutiny is arguably as great in a contested divorce which is ultimately settled.

9. Gail argues in her conclusion that the court should reconsider the superior court's decision on the award of reasonable actual attorney's fees and make an award to her. There was no cross-appeal, however. Also, the authority she cites, *Hilliker v. Hilliker*, 768 P.2d 115 (Alaska 1988), is inapplicable. That case specifically states the standard for awarding fees at the end of a divorce trial, which entails review of the parties' relative economic status, is not applicable to awards of fees on appeal. The trial court in the case at bar had each party bear its own costs and fees. Given Gail's superior economic position, she benefited from this ruling.