Joseph NOTKIN, Appellant,

v.

Nitaya B. NOTKIN, Appellee.

No. S–7182.

Supreme Court of Alaska.

July 26, 1996.

Dick L. Madson, Fairbanks, for Appellant.

Valerie M. Therrien, Fairbanks, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

## I. INTRODUCTION

Joseph Notkin appeals, contending that the superior court erred both in setting aside the Notkins' original property settlement agreement and in its resolution of property and support issues. We affirm.

## II. FACTS AND PROCEEDINGS

Nitaya Notkin and Joseph Notkin were married in 1984. Joseph works as an architect and earns approximately $56,000 a year. Nitaya works as a hair stylist with an anticipated future earning capacity of approximately $13,200 a year; she is also raising and supporting a son from a prior relationship. At the time of their divorce, it was unclear whether there was any positive equity in the family home. The only marital property available for division was two retirement accounts Joseph had acquired with employers.

Nitaya filed for divorce in April 1994. The Notkins reached a property settlement agreement, which was filed with the superior court in November. Nitaya's lawyer stated that she believed the settlement was unfair to her client, but she nonetheless went ahead and drafted the settlement agreement and signed it. An uncontested divorce hearing was scheduled for December 13.

Nitaya soon had second thoughts about the property settlement agreement. On December 9, she moved the court to set aside the agreement and allow the divorce to proceed to trial as originally scheduled. While the agreement had been filed with the court the previous month, it had neither been approved by the superior court nor incorporated into the terms of a divorce decree at the time Nitaya moved to have it set aside.

The superior court granted Nitaya's motion to set aside the settlement agreement. The case then proceeded to trial; the superior court entered its judgment in May 1995. The court divided the monies in Joseph's retirement accounts, and awarded Nitaya reorientation alimony. Joseph appeals both the superior court's decision to set aside the original settlement agreement and its resolution of property and support issues.

## III. *DISCUSSION*

### A. *The Superior Court Did Not Err in Setting Aside the Notkins' Property Settlement Agreement.*

In reviewing a superior court's decision to set aside a property settlement agreement, or its refusal to do so, "[t]he standard of review and the substantive issue are intertwined...." *Murphy v. Murphy,* 812 P.2d 960, 965 (Alaska 1991). "[A] court may accept as 'just' a divorce property settlement entered into by parties represented by counsel." *Kerslake v. Kerslake,* 609 P.2d 559, 560 (Alaska 1980) (footnote omitted). "[I]nsofar as an agreement relates to the division of property, 'the separation agreement should be controlling in the absence of fraud, duress, concealment of assets or other facts showing that the agreement was not made voluntarily *and with full understanding.*'" *Id.* at 560, n. 1 (quoting H. Clark, *Law of Domestic Relations* § 16.10, at 551 (1968)) (emphasis added).

As the superior court observed, "[t]he record indicates that Nitaya is not sophisticated in matters relating to division of property and financial obligations." Nitaya affied that

"I did not know what I was doing and I did not know how to communicate what I needed to my attorney or the system.... I thought I knew, but all I knew was that I needed money and I thought I could get some money quick." Nitaya is originally from Thailand, and it is clear from her transcribed testimony that she is not fully conversant in English.

This evidence suggests that Nitaya lacked a full understanding of the true nature and consequences of her actions at the time she entered into this agreement. Nitaya did possess a certain level of understanding as to what she was doing; she testified later that she had understood at the time she signed the agreement that:

> It isn't fair. I need the money. I know it's not fair. I want to get it done, over, get to the part—I don't want anything. I just want to get it over.

Although this testimony suggests that Nitaya knew in a general way that she was accepting an unfair arrangement in exchange for some immediate cash and finality, the trial court did not err in setting aside the property settlement. Nitaya's lack of familiarity with financial and property matters and her difficulties in communication support the conclusion that she lacked a full understanding of what she was doing. We affirm the superior court's order setting aside the property settlement agreement.

Our decision should not be misunderstood as signalling a new level of heightened scrutiny for property settlements entered into by parties to a divorce. It is still the case that " '[s]tipulations and settlements are favored in law because they simplify, shorten and settle litigation without taking up valuable court resources,' " and that this principle applies in the context of divorce property settlements. *Murphy,* 812 P.2d at 965 (quoting *Interior Credit Bureau, Inc. v. Bussing,* 559 P.2d 104, 106 (Alaska 1977). It also remains the case that divorce property settlements do not receive the same statutorily-mandated level of heightened scrutiny that dissolution property agreements receive.[1] It is equally the case, however, that

---

1. AS 25.24.230(a) allows a court to grant a final decree of dissolution only after finding that "the spouses understand fully the nature and conse-

quences of their action" and that "the written agreements between the spouses concerning maintenance and tax consequences, if any, divi-

even under the more relaxed scrutiny afforded property settlements in divorce actions, courts need not accept property settlements as controlling when the facts indicate that an agreement was not made with full understanding. *See Kerslake*, 609 P.2d at 560, n. 1.

### B. *The Superior Court Did Not Err in Valuing Joseph's Retirement Account.*

■ Joseph argues that the superior court erred in valuing his retirement account at Design Alaska, his employer at the time of the divorce, because it did not reduce the value of this account to reflect the debt on the account from loans taken out on it during the marriage. Nitaya called Rebecca A. Jones, business manager and human resources director for Design Alaska, as a witness. Jones testified that the $30,000 valuation of the retirement account took the loans into account. Because this testimony provided ample support for the trial court's valuation, this valuation is not clearly erroneous. *See Rice v. Rice*, 757 P.2d 60, 62 (Alaska 1988) (trial court's valuation of marital property is a factual determination that will be set aside only if clearly erroneous).

### C. *The Superior Court Did Not Abuse Its Discretion in Awarding Nitaya Reorientation Alimony.*

■ The superior court awarded Nitaya reorientation alimony "to allow Ms. Notkin to establish herself as a single parent in the community." This award consisted of three parts: (1) Joseph was required to assume full responsibility for Nitaya's outstanding car payments; (2) Joseph was required to assume responsibility for Nitaya's student loan; (3) Nitaya was awarded an additional $5,500 in cash "to take care of all obligations, past, present, or future."

Joseph appeals this award of reorientation alimony, claiming that the award was based in part on a factor not authorized by statute—Nitaya's need to support her son, that the cash award was unsupported by any evidence, and that the court abused its discretion in ordering Joseph to assume responsibility for the student loan and car payments.

■ "An award of alimony is within the trial court's discretion and will be set aside only if it is unjust or unnecessary." *Richmond v. Richmond*, 779 P.2d 1211, 1215 (Alaska 1989). "The purpose of reorientation alimony is to allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce." *Id.* at 1215, n. 6. The superior court correctly identified Nitaya's situation as one calling for reorientation alimony, given the dramatically reduced income she would be living on after the divorce. Furthermore, none of Joseph's specific objections to the alimony award has any merit.

#### 1. *Consideration of Nitaya's need to support her son*

There was nothing inappropriate in the court considering "Ms. Notkin's role as a mother and the need she has to raise and support her son" in awarding reorientation alimony. Instead of constituting a disguised child support award, as Joseph suggests it does, the court's consideration of Nitaya's need to support her son was essential if the reorientation alimony award were to serve its purpose of helping Nitaya adjust to the changed financial circumstances of the divorce.

#### 2. *The $5,500 cash award*

Joseph argues that the $5,500 cash award to satisfy "any and all obligations past, pres-

---

sion of property, including retirement benefits, and allocation of obligations are fair and just[.]" In contrast, with divorces there is no "affirmative duty on a trial court to examine every property settlement reached by the parties to determine if it is just." *Kerslake*, 609 P.2d at 560, n. 1. Furthermore, while AS 25.24.220(h) requires a court to "use a heightened level of scrutiny" in reviewing a property agreement if there is a minor child of the marriage or "a patently inequitable division of the marital es-

tate," this statutory section applies only to dissolutions and "afford[s] no additional protection for divorce actions[.]" *Murphy*, 812 P.2d at 965, n. 8. As we stated in *Murphy*, "[t]he legislature may want to consider extending the heightened level of scrutiny to divorces commenced under AS 25.24.010, for the need for heightened scrutiny is arguably as great in a contested divorce which is ultimately settled." *Id.*

ent, and future" was unsupported by any evidence, since the court had already ordered Joseph to "pay all Nitaya's existing debts or obligations which consisted of her car loan and student loan." This argument is not supported by the record. The trial court heard testimony regarding numerous other obligations Nitaya had incurred: the cost of low income housing, medical expenses, automobile insurance, telephone, electricity, groceries, laundry, school lunches for her son, and gas. Nitaya testified that

> ... I can't afford to pay—I cannot live on my own income. It's hard. I can't live on. Is so hard for me. Just don't make it. Every month just behind, behind.

These expenses are among the minimal obligations Nitaya will have to meet in maintaining herself and her son. While the superior court's one time only cash award may be an imprecise way of helping Nitaya stabilize as to the expense of meeting these obligations, there is no reason to assume that this award was in any way duplicative of Joseph's assumption of Nitaya's obligations regarding car payments and the student loan.

### 3. *Student loan and automobile payment obligations*

Joseph argues that the court "in effect, ordered a form of after-the-fact rehabilitative alimony" when it required him to assume responsibility for Nitaya's student loan. He also argues that because Nitaya's car was purchased after the Notkins separated, it was not marital property and the payments owed on it are not a marital debt. The court might have constructed a more conventional alimony award by requiring Joseph to make monthly alimony payments that would be calculated to cover these obligations. However, the award it did construct is nonetheless well-tailored to fit the purposes of reorientation alimony. Joseph is only responsible for obligations remaining as of May 1, 1995. In other words, his payments on the loan and on the car are timed to coincide with the period in which Nitaya is making the financial adjustment to postdivorce life on a dramatically reduced income. In order for a person to adjust to living on less than $15,000 a year, this form of relief could be critical.

### 4. *Preference for property division over alimony*

Finally, Joseph argues that Nitaya could have paid the balance on her student loan and car payments out of the property division on the retirement account. "[R]eorientation alimony is only appropriate when the property settlement will not adequately meet the parties' reasonable needs." *Richmond,* 779 P.2d at 1215, n. 6. "Where property can provide support, alimony is neither just nor necessary." *Hilliker v. Hilliker,* 755 P.2d 1111, 1112 (Alaska 1988).

One aspect of the superior court's alimony award may violate the preference for property division over alimony. The court ordered that the $5,500 in reorientation alimony for "all obligations, past, present, or future" be taken out of Joseph's retirement account. Given the preference for property division, the court might have awarded Nitaya a larger share of the retirement account, instead of designating this additional share of the Notkins' one item of divisible marital property as "alimony." However, because this amount comes from the same source and is a one time only payment, regardless of how it is labelled, any error is harmless.

As to the car payment and student loan components of the alimony award, these expenses could not have been paid for by increasing Nitaya's share of the retirement accounts. The court determined that the value of Joseph's retirement accounts was $32,128, and awarded Nitaya $16,014 of this amount in the property division, roughly half of the total. However, the court ordered Joseph to pay the $5,500 for "obligations" and Nitaya's $5,000 attorney's fee award out of his share of the property division. Furthermore, to help Nitaya cover the tax consequences and penalties that would result from the early withdrawal of the retirement monies, the court then decided to "round up the total sum that Ms. Notkin shall withdraw from the [ ] account to $30,000." This leaves only $2,128 in Joseph's share of the account monies, far less than the $5,500 left to pay on Nitaya's student loan, not to mention the payments on the car.

As to Joseph's assertion that Nitaya could have paid off her student loan and car payment obligations out of her $16,014 from the property settlement, the superior court considered the parties' earning capacities, educational backgrounds, employment skills, work experiences, and custodial responsibilities, acknowledged that reorientation alimony is only appropriate when the property settlement will not adequately meet a party's needs, and concluded that such alimony was appropriate. The court's conclusion was not an abuse of discretion. The amount of property that was available for division was small, Nitaya's earning capacity is low, and a separate award of reorientation alimony in addition to the property division seems to have been the only way to adequately ensure that she would be able to meet her reasonable needs.

### D. The Award of Attorney's Fees to Nitaya Was Not Manifestly Unreasonable.

■■■■■ The award of attorney's fees in a divorce action is committed to the sound discretion of the trial court. *Burrell v. Burrell*, 537 P.2d 1, 7 (Alaska 1975). "The trial court's discretion in awarding attorney's fees will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.'" *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

Joseph argues that the superior court should not have awarded Nitaya attorney's fees when "the decision to incur the majority of the fees was totally due to Nitaya's bad faith in refusing to honor the settlement agreement." However, the superior court did not award Nitaya those attorney's fees accrued on the motion to set aside the property settlement agreement. The court instead awarded Nitaya partial attorney's fees of $5,000 when it entered judgment.

■■■ In awarding attorney's fees in a divorce action, "[t]he relevant considerations are the relative economic situation and earning power of each party." *Hartland v. Hartland*, 777 P.2d 636, 644 (Alaska 1989). There was nothing so manifestly unreasonable about Nitaya's attorney charging fees in a contested divorce proceeding that would warrant dispensing with the usual relevant considerations, simply because the divorce became contested only after the settlement agreement was set aside. Given the disparity in the Notkins' economic situation and earning power, the superior court did not abuse its discretion in awarding Nitaya attorney's fees.

### IV. CONCLUSION

We AFFIRM the judgment of the superior court.